

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Claude Isbell
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. O-6944

Re: May the Brownsville Ship
Building Corporation, which
was granted a charter while
using as its purpose clause
the provisions of Art. 1302,
Subdiv. 74, R. C. S., amend
said charter by changing its
purpose clause to read as is
provided in Art. 1302, Sec.
34, R. C. S.?

Your request for our opinion on the above question
reads as follows:

"On April 1, 1941, the above mentioned cor-
poration filed its charter in this office using
as its purpose clause the provisions of subdivi-
sion 74 of Article 1302, Texas Revised Civil
Statutes, which is as follows:

"'The purpose for which it is formed is
the building, constructing and repairing
boats, ships and vessels for use in and
for the navigation of rivers, lakes,
streams and seas, with power to build,
construct, maintain and operate such docks,
dry docks, marine railways, wharves and
other appurtenances as may be necessary for
the accomplishment of such purpose, as au-
thorized by Subdivision 74 of Article 1302,
of the Texas Revised Civil Statutes, 1925.'

Hon. Claude Isbell, page 2

"On November 6, 1945, we were presented with a proposed amendment to the charter together with a proper filing fee and a proposed supporting affidavit. The proposed amendment to the charter changed the name of the corporation, increased its capital stock from $50,000.00 to $75,000.00, and also proposed to change its purpose clause to read as is provided in Section 34 of Article 1302 of the Texas Revised Civil Statutes, 1925.

"We enclose herewith for your convenience photostatic copies of both the original charter of such company and the proposed amendment of such charter.

"On November 10, 1945, we returned the proposed amendment to the attorneys for such corporation advising them that in our opinion Article 1314 of the Texas Statutes prohibits such a proposed amendment to the charter of the corporation altering its purpose clause.

"On November 15, 1945, the attorneys for such corporation returned the proposed amendment contending that we were in error in our interpretation of the application of Article 1314 to the instant proposed amendment. We enclose herewith in this connection photostatic copies of these two letters aforesaid.

"Please, therefore, in the premises, advise us:

"1. Should the Secretary of State file the instant proposed amendment?"

The original purpose clause of said charter is set out in your request and contains the words of Article 1302, Subdivision 74, Vernon's Annotated Civil Statutes. The purpose clause of the proposed amendment of said charter, which contains the words of Art. 1302, Subdiv. 34, reads as follows:

"The purpose for which it is formed is to transact any manufacturing or mining business, and to purchase and sell goods, wares and merchandise used for such business; as authorized by Subdivision 34 of Article 1302 of the Texas Revised Civil Statutes, 1925."

Art. 1314 is in part as follows:

"Any private corporation organized or incorporated for any purpose mentioned in this title, may amend or change its charter or act of incorporation by filing, authenticated in the same manner as the original charter, such amendments or changes with the Secretary of State. * * * No amendment or change violative of the

Hon. Claude Isbell, page 3

Constitution or laws of this State or any provision of this title or which so changes the original purpose of such corporation as to prevent the execution thereof, shall be of any force or effect."

A similar situation was involved in the case of Johnston et al v. Townsend, Secretary of State, 124 S. W. 417, which had to do with an original application for a writ of mandamus filed in the Supreme Court to compel the Secretary of State to file a charter of incorporation prepared and submitted under the same subdivision of the statute as that here under consideration, and which the Secretary of State refused to file on the ground that it was for the formation of a corporation for two purposes. The Supreme Court upheld the action of the Secretary of State on that ground, as well as on the ground that it did not clearly specify the purpose for which the corporation was created. In so holding, the court laid down the following rules of law:

"It is the contention of the relators that the mention of both manufacturing and mining in one subdivision of the statute authorizes the formation of corporations for both purposes without any limitation, which contention is based upon certain expressions in the opinion of this court in Ramsey v. Todd, 95 Tex. 624, 69 S. W. 133, 93 Am. St. Rep. 875. On the other hand, respondent contends that manufacturing and mining are distinct businesses, the transaction of which by one corporation is not authorized by the provision referred to permitting an incorporation for the one 'or' the other.

"We do not fully agree with either contention. It must be remembered, as was pointed out in Ramsey v. Tod, that another provision requires that the charter state 'the purpose' of the incorporation. It is also to be noted that that for which an incorporation is authorized by subdivision 14 is the transaction of 'a business' -- not of two or more businesses. Either mining or manufacturing may be a business by itself. The two may be wholly distinct from and unrelated to each other. A charter authorizing both without restriction would contain a statement, not of the purpose, but of the purposes, and would empower the corporation to transact, not a business, but businesses. Instances of

Hon. Claude Isbell, page 4

this are a business of mining for gold and another
of manufacturing cottons, of mining for coal and of
manufacturing shoes. Regardless of the use of
alternative language in subdivision 14, we think
the character of the statutory provisions is such
as to exclude the construction that the transaction
of two distinct businesses of mining and manufacturing
are here provided for. On the other hand, there may
be a business consisting of both manufacturing and
mining, in which the operations are so related to
each other as to constitute an entirety. The
products of the mine may be sold in their crude
state, or may be manufactured into many different
articles, and these may be sold or devoted to their
various uses. This might justly be treated as the
transaction of a manufacturing and mining business,
and come within the language of the statute. We do
not think that the use of the conjunction 'or' was
intended to prevent an incorporation for that or
any other one business, although it consist partly
of mining and partly of manufacturing.

* * *

"Evidently an incorporation is allowed by this
subdivision for any undertaking that comes within
the meaning of all or either of these words. It
does not follow that several undertakings which in
their natures are separate and distinct may be in-
cluded as one. So, we think, 'a business' may
properly be incorporated as a manufacturing and
mining business, but two businesses, one of manu-
facturing and the other of mining, cannot be made
one, because the statute does not so provide. The
legislative intention that the business should be
a unit is further shown by the fact that in sub-
division 14 there is no general authority for the
purchase and sale of goods, but only an authority
for the purchase and sale of those 'used for such
business.'

"A charter must specify the purpose for which
the corporation is to be created. This should be
done with sufficient clearness to enable the
Secretary of State to see that the purpose speci-
fied is one provided for by the statute, and to
define with some certainty the scope of the business
or undertaking to be pursued. The charter tendered
in this case is so general and indefinite in its

Hon. Claude Isbell,  page 5

language that while it might apply to one business, such as we have mentioned, consisting of both manufacturing and mining, with the purchase and sale of goods, etc., used for it, it might also be taken to authorize the transaction of two businesses, one of manufacturing and another of mining, with the further power of purchase and sale incident to each. And it appears to be the purpose of the relators to use the charter for the carrying on of what we regard as two distinct businesses. We may look to this as illustrative of the capacities for use of that which it is sought to have the respondent file, although we do not think that questions as to what may be done under a charter ordinarily arise when it is proposed to have one filed. It is proper and important to see that the purpose of a charter is so expressed as to carry out the intention of the Legislature in making that requirement; for it is by a compliance with it that the public, as well as those specially interested in corporations, are to be protected against the assumption of powers not granted. It appears from the petition that the relators who are also the proposed corporators have heretofore acted as partners in mining for oil, gas and water, and have manufactured their own tools and equipment and devices used in that business, and have invented and received patents on some which were new. They have been able to manufacture more of these than they have needed in doing their own work, and have been engaged in selling them, and the manufacturing business which they wish to incorporate is that of making these tools, devices, etc., for sale to others. Such manufacturing has heretofore been a part of the business which, as individuals, they had a right to conduct, but it by no means follows that it with all else that is proposed for the corporation is only one business of mining and manufacturing such as one corporation may follow. It seems plain that the business of manufacturing for sale, tools, etc., for mining is as distinct from the business of mining as the business of manufacturing for sale farming implements would be from farming. In order to hold that the statute allows the incorporating for two such purposes, we should have to hold that it authorizes the incorporation of one company for distinct businesses of manufacturing and mining, which, as we have already said, is not true. And, as the charter offered can be interpreted as meaning and is intended

Hon. Claude Isbell, page 6

to mean that it authorizes the pursuit of both businesses, we think the respondent had the right under the law to refuse to file it until the doubt as to its scope should be removed by a more specific statement of the purpose."

If each of the grounds set forth in the above opinion for refusing to file said charter were sufficient under the facts of that case where an original charter was involved, they would be sufficient here, especially the first ground thereof, since an amended charter is here involved. The original charter of the Brownsville Ship Building Corporation having authorized a business such as building, constructing and repairing boats, ships and vessels, together with the other activities therein described, same would necessarily constitute the manufacturing business that would be carried on under the amended charter, and said manufactured articles and materials, docks and appurtenances used in connection therewith would be the goods, wares and merchandise to be purchased and sold under the amended charter. But we are unable to see where such manufacturing business, and the purchase and sale of such products, could be so related to a mining business and the purchase and sale of its products as to constitute an entirety under the rules of law laid down in the above case. For this reason, therefore, it is our opinion that your question should be, and it is, answered in the negative, as well also for the further reason that the purpose clause of such amended charter does not clearly specify the purpose of the corporation after the filing of said amendment.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

BY *Jas. W. Bassett*
Jas. W. Bassett
Assistant

JWB:LJ

APPROVED DEC 20, 1945

ASSISTANT
ATTORNEY GENERAL


APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN